CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 27 2014
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TIMOTHY JASON BOURNE, | ) | CASE NO. 7:14CV00140 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| SOUTHWEST VIRGINIA REGIONAL | ) | |
| JAIL, ET AL., | ) | By: Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant(s). | ) | |

Timothy Jason Bourne, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Southwest Virginia Regional Jail Authority ("SVRJA") officials at the SVRJA detention facilities in Haysi ("the Haysi jail") and Tazewell ("the Tazewell jail") have violated his constitutional rights by treating him differently than other inmates. Upon review of the record, the court finds that the action must be summarily dismissed.

## I. Background

### A. Unequal Treatment of Inmates

When he filed this complaint, Bourne had been incarcerated for some months at the SVRJA facility in Haysi, but had been previously confined at the Tazewell facility. In Claim 1, Bourne alleges that at the Tazewell jail, officials allowed his family to subscribe to the Bluefield Daily Telegraph newspaper for delivery to Bourne at the jail. When Bourne asked an officer at the Haysi jail for permission to receive the Bluefield Daily Telegraph, the officer told him that the Haysi jail only receives two newspapers, and inmates are not allowed to subscribe to their own papers.

In Claim 3, Bourne complains that officials at the Tazewell jail offered him the opportunity to attend church services only two times in six months. He alleges that inmates in

maximum security units at other SVRJA jails and in other units of the Tazewell jail, are able to attend religious services nearly every week. Officials at the Tazewell jail told Bourne that the number of church services offered there depended on the number of volunteers who came into the jail to conduct services.

In Claim 5, Bourne alleges that at the Tazewell jail, inmates' families may order books and magazines from vendors to be sent directly to the inmates. He asserts that "max inmates" like himself receive three hours of recreation per day, while minimum and medium security inmates get six to ten hours of recreation per day. Bourne alleges that at the Duffield jail facility, an inmate in the maximum security unit may work delivering trays for pay, with the monies earned going toward his court fees and fines. He does not have these same opportunities at the Haysi facility and contends these differences in jail policies are unconstitutional.

### B. Mail Handling Incident

In Claim 2, Bourne complains that at the Haysi jail on September 16, 2013, Officer Tony Lockhart gave three pieces of Bourne's personal mail to another inmate in his pod, R. Armstrong, instead of bringing the mail to Bourne's cell. Armstrong later delivered to Bourne some photos of his family, a letter from his thirteen-year-old daughter, and the return address from an envelope. When Bourne complained to Lockhart for giving Armstrong, an alleged "registered sex offender," an opportunity to read Bourne's mail and see pictures of his teenage daughter, the officer apologized, saying that it was a busy night. Bourne then complained to higher ranking officers, stating his fear that Armstrong might have kept a picture of Bourne's daughter or that he might try to contact her. An administrator later advised Bourne that officers had searched Armstrong's cell on October 2, 2013, and found no photos of Bourne's family in Armstrong's possession. (ECF No. 11-2, at 19.)

2

### C. Food Service

Two of Bourne's claims allege food service problems at the Haysi facility. Claim 4 alleges that Bourne's food is often cold when he receives it, despite prior complaints. The juice served with breakfast is frequently frozen. In Claim 7, Bourne complains that although inmates serving his food wear hairnets, officers around the food trays do not wear hairnets. He complains that this situation puts him at risk of having hairs in his food.

### D. Limited Stamps for Outgoing Mail

In Claim 6, Bourne complains that Haysi jail officials will only allow an inmate to purchase five stamps per week from the commissary. He asserts that this limit unfairly restricts the number of letters he may write per week to family and friends, in violation of his First Amendment right to free speech.

### E. Relief Sought

As relief in this § 1983 action, Bourne seeks injunctive relief, directing SVRJA officials to allow inmates at all facilities to order newspapers for delivery to the jail; to hire a chaplain for each jail rather than relying on volunteers from the public to conduct religious services; to allow inmates to receive their meals in a "chow hall . . . served to them hot or warm"; to enforce the same rules for inmates at all SVRJA jails; to raise the limit on stamps that an inmate can purchase; and to require anyone working around food to wear a hairnet.

## II. Discussion

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to

raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## A. Different Jail Policies

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "does not take from the States all power of classification, but keeps governmental decision makers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir.2002) (citation and internal quotation marks omitted). Prisoner litigants must generally demonstrate that the alleged unequal treatment of similarly situated individuals is not rationally related to a legitimate governmental purpose. Moss v. Clark, 886 F.2d 686, 690 (4th Cir.1989) (finding no equal protection violation where inmates sentenced in D.C. courts and housed in federal prisons could not earn good time credit at as favorable a rate as D.C. inmates housed in D.C. prisons); Strickler v. Waters, 989 F.2d 1375 (4th Cir.1993) (finding no equal protection violation where inmate with sentence to serve in state prison facility spent long period in local jail with less favorable conditions, including overcrowding, inadequate exercise facilities, poor climatological conditions, and an inadequate library with restricted access). Even where similarly situated persons are treated differently, a state classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it]." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Plaintiff "must plead sufficient facts to satisfy each requirement. Veney, 293 F.3d at 731.

Bourne has not stated facts meeting any facet of the equal protection standard. First, he does not state facts establishing that he is similarly situated in all relevant respects to inmates

4

assigned to other pods or other SVRJA jails. Bourne's escape offense, his security level, the stage of his trial proceedings, his home, his criminal history, and dozens of other factors might legitimately be considered in assigning inmates to a particular jail and housing area. Bourne has not shown that he shares all relevant classification factors with the inmates in the areas he compares.

Second, Bourne fails to show that the different policies he has encountered in different housing areas or jails are unrelated to legitimate jail interests. Each jail operation will have its unique security needs, staffing problems, and economic interests, which its officials have discretion to address with policies as they, in their professional judgment, find necessary to their circumstances. In each of the comparisons Bourne makes, the court can easily conceive of legitimate reasons that policies on that subject might vary between different jails or different pods within the same jail. A jail with fewer mailroom staff and primarily short-term detainees might find it unworkable to allow detainees to subscribe personally to newspapers or magazines, or to have inmates working within the prison; a larger jail, with more long-term inmates and a larger staff, might see prisoner jobs and outside newspapers as important for prisoner morale and rehabilitation. Providing out-of-cell recreation for inmates in a maximum security pod requires greater expenditures for staffing per hour than for inmates in minimum or medium security areas of the jail. These costs may reasonably limit the amount of recreation a smaller facility can afford to offer all of its inmates.

Bourne simply has not shown that the differences of which he complains are unreasonable or unrelated to the differences in administrative concerns being addressed in different facilities or housing areas. The court will summarily dismiss Bourne's equal protection claims (Claims 1, 3, and 5) under § 1915A(b)(1) for failure to state any constitutional claim.

## B. Negligent Mail Delivery

Inmates retain certain First Amendment rights, including the right to receive mail. Thornburgh v. Abbott, 490 U.S. 401, 407-08 (1989). A mail interference claim, however, requires a showing of harm and more than one or two incidents of mail delivery problems. A prisoner does not have a cognizable claim that prison mail procedures violated his rights if he received and could read his mail. See, e.g., United States v. Stotts, 925 F.2d 83, 88 (4th Cir. 1991) ("It is difficult to see a burden of constitutional dimension when Stotts receives and reads all his incoming mail . . ."). Furthermore, to be actionable, a mail interference claim requires evidence "to indicate a pattern or practice of opening or interfering with the delivery of . . . mail." Bryant v. Winston, 750 F.Supp. 733, 734 (E.D.Va.1990); Pearson v. Simms, 345 F.Supp.2d 515, 519 (D.Md.2003), aff'd, 88 F. App'x 639 (4th Cir.2004)) ("[O]ccasional incidents of delay or non-delivery of mail do not rise to a constitutional level."). Finally, an isolated, negligent interference with delivery of inmate mail is not actionable as a constitutional violation. Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995); see also County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protection).

Bourne's claim against Officer Lockhart for giving his mail to Armstrong alleges mere negligence that simply does not rise to constitutional proportion. Bourne does not allege that prison policy or routine practice condones officers giving his mail to other inmates for delivery. Nor does he state facts indicating that Lockhart's isolated, negligent act deprived him of the right to receive and read all of his mail. Bourne's own submissions indicate that he suffered no harm from the incident, as officers found no sign that Lockhart had kept any items from Bourne's

mail. Finding no constitutional claim actionable under § 1983 regarding the one-time mishandling of Bourne's mail, the court will summarily dismiss Claim 2 under § 1915A(b)(1) for failure to state a claim.

### C. Food Service Problems

The Eighth Amendment protects prisoners from cruel and unusual living conditions, but "restrictive and even harsh" conditions that do not inflict harm "are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To state a claim regarding unconstitutional conditions of confinement, a prisoner must either "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Plaintiff must also show that the defendant officials acted with deliberate indifference toward the risk of harm posed by the challenged condition—that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed, that he actually drew that inference, and that he disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994).

Bourne's submissions do not indicate that the cold food or the officers' failure to wear hairnets around food service have caused or are likely to cause Bourne any serious health problems or injuries. Moreover, his allegations do not show that any particular jail official or officials knew of and disregarded any significant risk of serious harm posed by the challenged conditions. Accordingly, the court finds no factual basis here for a § 1983 claim and will dismiss Claims 4 and 7 under § 1915A(b)(1) as legally frivolous.

### D. Five-Stamp Limit

A prison policy that impinges on an inmate's First Amendment rights related to his outgoing mail is valid "if it is reasonably related to legitimate penological interests." Altizer v. Deeds, 191 F.3d 540, 548 (1999) (citing, Turner v. Safley, 482 U.S. 78, 89 (1987). Policies that cause occasional delays in sending or receiving mail are not actionable under § 1983. Pearson, 345 F.Supp.2d at 519.

As an initial matter, the five-stamp limit does not deprive Bourne of any constitutionally protected right. At the most, it delays Bourne's mailing of some letters. Moreover, the jail's five-stamp-per-week limit is reasonably related to legitimate penological interests in safe and efficient jail administration. Allowing inmates to possess large numbers of stamps and other items with clear monetary value can encourage extortion or theft. A weekly, per-inmate limit also provides a reliable measure of the number of stamps to keep in stock to ensure stamps are available for all inmates who want to purchase them. Though he may encounter some delays, plaintiff simply does not forecast evidence that would demonstrate that he has been deprived of his constitutional right to communicate with the outside world. The court summarily dismisses this claim under § 1915A(b)(1) as legally frivolous.

### III. Conclusion

For the reasons stated, the court dismisses Bourne's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state a claim. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 26th day of June, 2014.

*[signature]*
Chief United States District Judge